RONALD CHARLES SILVA. PRO-SE
NO. 1115/78
NORTHERN NEV. CORR. CTR. (NNCC)
P.O. BOX 7000
CARSON CITY, NV 89702

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CASE NO. 3:00 -CV -00373 -HDM-WGC

RONALD CHARLES SILVA, ex. rel. IN re

PRISON LEGAL NEWS, A PROJECT OF THE
HUMAN RIGHTS DEFENSE CENTER, a PAUL WRIGHT
(CURRENT PUBLISHER OF PRISON LEGAL NEWS)
      PLAINTIFF

    vs.

JACKIE CRAWFORD, IN HER OFFICIAL CAPACITY
AS THE FORMER DIR. OF NDOC, JOHN SLANSKY
(DECEASED), IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES AS FORMER ASST. DIR. OF NDOC,
ROBERT BAYER, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITIES AS THE FORMER DIR.
OF NDOC, DOES I- XXV, DEFENDANT RED AND
WHITE CORPORATIONS I-X, AND BLACK AND BLUE
STATE AND/OR MUNICIPAL ENTITIES I-X, PRISON
LEGAL NEWS, et al.,
     DEFENDANTS,

MOTION FOR CONTEMPT OF
SETTLE AGREEMENT. LR 7-1

COMES NOW THE PLAINTIFF "PLTF" RONALD CHARLES SILVA, PRO-SE PER LR 7-1 ex.

rel. IN re TOO THE ABOVE- REFERENCED INSTANT CASE (SETTLED: FEB. 26, 2016) DOC. 140

AS A NEV. DEPT. CORR. "NDOC" INMATE AT NORTHERN NEV. CORR. CTR. "NNCC" OF

1721 EAST SNYDER AVE. (MAILING) P.O. BOX 7000, CARSON CITY, NV 89702. IN MOTION FOR

CONTEMPT AGAINST NDOC, ex. rel. RESPECTIVE NNCC WARDEN ISIDRO BACA,

SENIOR CORR. OFFICER "SCO" "COLEMAN" - 'MAIL ROOM OFFICER', ex. rel. CHAPLIAN.

JAMES STOGNER". WHOM WITH MALICE AND AFORETHOUGHT NEGATE ADHERENCE

DOC. NO. 140 "AGREEMENT" PG. 14 OF 15 (SECTION VIII BINDING EFFECT UPON

SUCCESSORS IN INTEREST). BASED ON ALL PAPERS ON RECORD AND BELOW

MEMORANDUM OF POINTS AND AUTHORITIES

SILVA, ex. rel. IN re PLN VS. COX, et. al.

NO. 3:00-CV-00373-HDM-WGC

MOT. CONTEMPT.

PAGE NO. 02 OF 06

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

01. ON FEB. 26, 2016 PLTF. PRISON LEGAL NEWS "PLN" VS. THE ABOVE DEF.(S) ENTERRED INTO A SETTLEMENT "AGREEMENT" DOC. NO. 140. POST THERE OF 3-29, 2019 WARDEN ISIDRO BACA, SRO COLEMAN, CHAPLIAN STOGNER, BREACHED THE TERMS AFFIRMED THEREIN TO DEPRIVE "PLTF. SILVA" AS AN NDOC-NNCC INMATE TO THE PROTECTIONS AGREED UPON TO DIVEST "SILVA" IN A MANIFESTED INJUSTICE BY DELIBERATE INDIFFERENCE AS REPRISAL TOO SILVA'S MESSIANIC JEWISH RELIGOUS FAITH IN LIBERTY INTEREST DEPRIVATION PURSUANT TO: 42 U.S.C. § 1997d; 42 U.S.C. § 2000 et. seq.; U.S. CONST. ART. III SEC 2 CL. ONE; NV. CONST. ART. 1 §§ 9, 10; N.R.S. 209.131(5)(6)(7); N.R.S. 209.161(3), NNCC-O.P. 750 "INMATE MAIL", A.R. 339.01(1)(A)(5); 339.02; U.S. CONST. AMEND. ONE. . .

02. ON OR ABOUT 29 DAY OF MARCH, 2019 "NNCC-'BACA, COLEMAN, STOGNER' WITHOUT DUE PROCESS CONST. AMEND. 14, SEIZED 4 "HEBRAIC ROOTS BIBLE A LITERAL TRANSLATION" IN UNAUTHORIZED MAIL NOTICE. UNDER FICTICOUS O.P. 750 CLAIM NOT ALLOWED, EVEN THOUGH ANY AND ALL OTHER INMATES EXCEPT "SILVA" RECIEVE RELIGOUS BOOKS THRU U.S. MAIL, WITHOUT LIMITATIONS.

03. STOGNER, COLEMAN, BACA RETALIATORY ACTIONS TO DENY THESE "BIBLES" ARE RESULT OF SILVA'S GRV. NO. 2006-30-27995; AND IN FURTHER REPRISAL TOO U.S. DIST. NV. CT. CASE NO. 3:19-CV-00157-LRH-CBC, SILVA VS. BACA, ex. rel, NDOC, et. al. AND REPRISAL CLAIM "BIBLES" MUST FIRST BE APPROVED. A CONFLICT WITH AGREEMENT.

04. THE AGREEMENT DOC. NO. 140 (2-26-16) at 9 OF 24, AFFIRMS PRIOR APPROVAL OF BOOK ORDERS, ERGO DOC. 140 at 10 OF 24, READS IN RELEVANT IN PART AS FOLLOWS

SILVA ex. rel. In Re PLN vs. COX. et. al.
No. 3:00-cv-00373-HDM-WGC
MOT. CONTEMPT.
PAGE NO. 03 OF 06

("WITH IN SIXTY DAYS OF THE DATE OF APPROVAL AS A MECHANISM OF INJUNCTIVE RELIEF TO ENSURE NDOC DOES NOT REVERT BACK TO THIS POLICY AND PRACTICE. DEFENDANTS AGREE THAT PRISONERS WILL NOT HAVE TO REQUEST ADVANCE PERMISSION IN ORDER TO HAVE AN INCOMMING BOOK AND/OR PUBLICATION REVIEWED BY MAILROOM STAFF AND/OR THE PUBLICATION REVIEW COMMITTEE FOR DELIVERY TO THE PRISONERS. DEFENDANTS FURTHER AGREE THAT PRISONERS WILL NOT HAVE TO ENSURE THAT BOOKS AND/OR PUBLICATIONS ARE DELIVERED ACCORDING TO ANY PARTICULAR TYPE OF TIME SCHEDULE IN ORDER TO HAVE AN INCOMMING BOOK AND/OR PUBLICATION REVIEWED BY MAIL ROOM STAFF") I.D. DOC. 140 at 16 OF 24

DOC. NO. 140 at 12 OF 24 ("DEFENDANTS ALSO AGREE TO IMPLEMENT A TRAINING PROGRAM FOR MAIL ROOM STAFF REGARDING THE HANDLING AND DESSEMINATION OF INMATE MAIL. TO THAT END. A TRAINING MANUAL WILL BE CREATED BY THE NDOC") I.D. DOC. 140 at 12 OF 24

DOC. NO. 140 at 12, 13. OF 24 ("FINALLY. THE NDOC ALSO AGREES TO FURTHER AMEND AND CLARIFY A.R. 750.06 AT ITS FIRST AVAILABLE OPPORTUNITY TO MORE CLEARLY OUTLINE THE DUE PROCESS REQUIRED WHEN PUBLICATIONS ARE CENSORED OR WITHHELD FROM A PRISONER"). I.D. DOC. 140 at 12, 13 OF 24

DOC. NO. 140 at 14 OF 24 "JURISDICTION TO ENFORCE" - THE COURT AGREE TO RETAIN JURISDICTION FOR ENFORCEMENT WILL BE LIMITED TO TEN YEARS" I.D. DOC. 140 at 14 OF 24

DOC. NO. 140 at 16 OF 24 ("NDOC ALSO AGREES TO MAINTAIN THE FULL TERMS OF THIS AGREEMENT IN ITS LAW LIBRARIES") I.D. DOC. 140 at 16 OF 24

DOC. NO. 140 at at 18 OF 24 ("THIS AGREEMENT SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE NDOC AND PLN AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS") I.D. DOC. 140 at 18 OF 24

SILVA ex. rel. IN RE PLN US. COX, et al.
NO. 3:00 - CV- 00373 - HDM- WGC
MOT. CONTEMPT
PAGE NO. 04 OF 06

65. BACA. ex. rel. NDOC ex. rel. COLEMAN, STOGNER. NEGATE COMPLIANCE NRS 209.131(5)(6)(7): NRS 209.161(3) TO FOLLOW RULES, REGS, AND POLICIES ex. rel. A.R. 339.01(1)(A)(5), IN FAILURE TO ENSURE "COLEMAN" WAS TRAINED WITH THIS FICTICIOUS MANUAL, NO UPDATE TO A.R. 750.06, AND SAME BACA, COLEMAN, STOGNER REFUSE TO ADHERE TO THIS AGREEMENT AND CENSORED WITHOUT DUE PROCESS

66. BACA, COLEMAN, STOGNER, CLAIM NO KNOWLEDGE OF THIS AGREEMENT. OR TO LAW LIBRARY SPV'R, CHRISTINE DUNBAR DOES NOT RETAIN THIS AGREEMENT FOR INMATE REVIEW. "SILVA" ONLY HAS "COPY" BECAUSE HE PAID FOR IT FROM PLN.

## II. LEGAL ANALYSIS

### I. STANDING

#### A. THE "AGREEMENT" IS NOT HONORED BY NDOC, BACA, COLEMAN, STOGNER

WHEN A CONTRACT IS CLEAR ON ITS FACE SUCH AS SETTLEMENT AGREEMENTS ARE COVERED IN SAME CONTEXT. IT WILL BE CONSTRUED FROM THE WRITTEN LANGUAGE AND ENFORCED AS WRITTEN, SANDY VALLEY ASSOCIATES VS. SKY RANCH 35 P.3d 964. 117 NEV. 948 (NEV. 2001) MARDIAN VS. WYRELESS SYSTEMS, INC. 114 P.3d 974 (2005), IN DETERMINING THE MEANING OF WORDS USED A COURT NOT ONLY CONSIDERS THE BARE MEANING BUT ALSO THEIR PLACEMENT AND PURPOSE. BAILEY US UNITED STATES, 516 U.S. 137 (1995). FOR BACA. COLEMAN. STOGNER AS A LOCAL PRACTICE WILL NEVER BE ALLOWED TO DEFEAT A PLAIN ASSERTION OF A FEDERAL RIGHT. FIRST NAT'L BANK US ANDERSON, 269 US. 341, 70 L.Ed 295 (A26). WHICH, BACA, STOGNER, COLEMAN DO (is evade clearly established precedent"), FURTHER REASONABLE OFFICERS SHOULD KNOW FROM THE ESTABLISHED PRECEDENT OF

FUENTES THAT THEIR ROLE IS NOT TO BE PARTICIPANTS IN PROPERTY DEPRIVATIONS WITHOUT NOTICE AND OPPORTUNITY. Id. at _____ VS. _____ 164 F.3d at 149. WHICH IS AT THE HEART OF THIS MOTION. THIS COURT HAS INHERENT AUTHORITY TO REGULATE THE CONDUCT OF THE PARTIES. SPURLOCK VS. F.B.I., 69 F.3d 1010, 1016 (9TH CIR. 1995), BACA, COLEMAN, STOGNER, EVEN THOUGH CLAIM NO IDEA IS NOT AN EXCUSE WHEN THEY KNOWINGLY CHANGED SILVA'S CONFINEMENT. RESNICK VS. HAYES, 213 F.3d 443 (2000). TO DENY EQUAL PROTECTION, YATES VS. STALDER, 217 F.3d 332 (2000); WHEELER VS. MILLER, 168 F.3d 241, 252 (1999); BACA WILL CLAIM HE DOES NOT CONTROL MAIL ROOM, THIS SHAMEFUL POLICY IS DEBUNKED PER HANSEN VS. BOARD OF TRUSTEES, 551 F.3d 559 (2008). UNDER THE DOCTRINE OF RESPONDENT SUPERIOR AN EMPLOYER IS VICARIOUSLY LIABLE FOR THE WRONGFUL ACTS OF ITS EMPLOYEES NRS 209.161(3), WITH IN THE SCOPE OF THEIR EMPLOYMENT. SHELBY VS. TRUCK, 533 N.E. 2d 1296, 1298 (1989) ("IN ORDER TO BE WITHIN THE SCOPE OF EMPLOYMENT THE EMPLOYEE MUST BE IN SERVICE OF THE EMPLOYER"). WHERE BACA, DOES SUPERVISE COLEMAN, STOGNER ct NNCC. NRS 209.161(3), SAME PARTIES WILL THEN CLAIM SILVA'S CLAIM'S DO NOT MEET FRCP 8(a) UNDER FRCP A SHORT AND PLAIN COMPLAINT IS SUFFICIENT AS LONG AS IT PUTS THE DEFENDANT ON NOTICE OF THE CLAIMS AGAINST IT. PHILLIPS VS. GIRDICH, 408 F.3d 124 (2005) SILVA HAS DONE THIS ABOVE HEREIN. WHERE, BACA, COLEMAN, STOGNER LOVE VS. REED, 213 F.3d 682 (8TH CIR. 2000) "FREE EXERCISE CLAIM STATED WHEN PRISON OFFICIAL'S INTERFERED WITH INMATE'S BELIEF'S". KOGER VS. BRYAN, 523 F.3d 789 (2000). AS RESULT OF BACA, STOGNER, COLEMAN'S NOT ADHERENCE TO THE AGREEMENT HAS NOW CAUSED SILVA AS AN INMATE FACILITATOR TO FREELY PARTICIPATE IN HIS FAITH. WHERE

SILVA ex. rel. In. Re Put vs. Coxet.al.
NO. 3700-cv-00373-HDM-WGC
MOT. CONTEMPT
PAGE NO. 06 of 06

BACA, STOGNER, COLEMAN AT NO TIME HINDER ANY OTHER INMATES ACCESS.

<u>USCA CONST. AMEND. ONE</u>

### III. RELIEF REQUESTED

WHEREFORE, "SILVA" KINDLY PRAY'S FOR THIS COURT TO ADMONISH NDOC at NNCC WARDEN ISIDRO BACA, CHAPLIAN JAMES STOGNER, SCO COLEMAN AS FOLLOWS, FOR:

1. FIND BACA, COLEMAN, STOGNER TO BE IN CONTEMPT OF THE AGREEMENT

2. STOGNER, COLEMAN, BACA, RETURN (4) WRONGLY SEIZED BIBLES TO SILVA

3. COLEMAN, STOGNER BE TRAINED VIA WRITTEN EXAM ON MAIL PROCEDURE FOR RECIEPT THEREOF BOOKS AND/OR PUBLICATIONS

4. BACA, STOGNER, COLEMAN, ADMONISHED IN NINETY DAYS INCARCERATION FOR CONTEMPT OF AGREEMENT

5. PROVIDE SILVA COSTS, INTERESTS, FEE'S REPLACEMENT COSTS OF TWO HUNDRED DOLLARS PER BIBLE.

RESPECTFULLY SUBMITTED BY

DATED 8TH APRIL, 2019

RONALD CHARLES SILVA, PRO-se, 1115178

### CERTIFICATE OF SERVICE

I, RONALD CHARLES SILVA, PRO SE PER LR5-1(c) CERTIFY MOT. FOR CONTEMPT OF SETTLEMENT AGREEMENT, LR7-1, IS TRUE AND CORRECT AND HAS BEEN ELECTRONICALLY FILED ON BELOW. UNDER PENALTY OF PERJURY.

01. CLERK COURT, U.S. DISTRICT NEVADA DISTRICT, 400 SOUTH VIRGINIA ST. RM.301 RENO, NV 89501.

DATED: 8TH APRIL 2019

RONALD CHARLES SILVA, PRO-se, 1115178

# EXHIBIT

# I.



# NOTICE RE: SETTLEMENT OF PRISON LEGAL NEWS v. COX

On March 3, 2016 the U.S. District Court for the District of Nevada approved a settlement between the Director of the Nevada Department of Corrections (NDOC) and Prison Legal News (PLN), a non-profit publisher in case number 3:00-cv-373-HDM. A complete copy of the fifteen (15) page settlement agreement is available to any prisoner upon request in each NDOC law library. A summary of the terms of the settlement are as follows:

1) <u>APPROVED VENDORS:</u>    NDOC will not use any "approved vendor" list to limit the choices that prisoners have among publishers, vendors or other book distributors. Prisoners are allowed to order and receive publications from any publisher, vendor or other distributor, assuming that the literature itself complies with other prison regulations. If there is any doubt that the sender of the publication is actually a publisher, vendor or distributor, NDOC will conduct all appropriate research regarding the legitimacy of any particular publisher, vendor or other distributor of printed literature.

2) <u>POSTAL RATES:</u>    NDOC no longer requires books to be mailed to prisoners via First Class mail and agrees not to use postal classification as a basis for rejection of any mail sent to NDOC prisoners.

3) <u>ADDRESS LABELS AND STICKERS:</u>    NDOC will not refuse to deliver mail to prisoners based on the presence of address labels or stickers alone.

4) <u>PREAPPROVAL OF BOOK ORDERS:</u>    NDOC will not require prisoners to get advance permission or any other type of preapproval in order to have an incoming book reviewed by NDOC staff for delivery to the prisoner.

5) <u>DUE PROCESS:</u>    NDOC will ensure that whenever a piece of mail is withheld from the regular course of delivery to a prisoner, written notice of the censorship and notice of the opportunity to appeal the censorship decision will be provided to both the sender of the mail and the prisoner who was intended to receive the mail. Any such mail will be retained by NDOC (rather than returned to sender) until all appeals of the initial censorship decision have been resolved. Notices of censorship provided (to both the sender and the prisoner) should clearly state the reason(s) for the censorship, should note the specific section or part of mail alleged to violate NDOC rules, and should indicate the name and address of the NDOC staff person who will consider any appeal of the censorship decision. Any such appeal will be conducted by a staff person who did not participate in the initial censorship decision and who will conduct a personal inspection of the censored mail before making his or her decision on the appeal.

U.S. District Court Judge Howard McKibben has retained jurisdiction over the case for enforcement purposes, if needed.

Counsel for Prison Legal News: Lance Weber or Sabarish Neelakanta, (561) 360-2523, Human Rights Defense Center, PO Box 1151, Lake Worth, Florida 33462 lweber@hrdc-law.org sneelakanta@hrdc-law.org

Counsel for the Director of the Nevada Department of Corrections: Clark Leslie, Chief Deputy, (772) 684-1258, or Gerri Hardcastle, (775) 684-1334, Office of the Attorney General, 555 East Washington Ave. Suite 3900, Las Vegas, NV 89101

( silva, ex.rel. In. re )

PCN vs. COX, et. al,
No. 3:00-cv-00373-HDM-WGC

settlement Agreement

$2^4$ Pages

1  ADAM PAUL LAXALT
   Nevada Attorney General
2  ANDREA R. BARRACLOUGH
   Chief Deputy Attorney General
3  Nevada Bar No. 9158
   CHARLES W. LEHMAN
4  Deputy Attorney General
   Nevada Bar No. 12994
5  Bureau of Litigation
   Public Safety Division
6  100 N. Carson Street
   Carson City, NV  89701-4717
7  Tel:  (775) 684-1261
   E-mail:  clehman@ag.nv.gov
8
   *Attorneys for Defendants James*
9  *Greg Cox and E.K. McDaniel*

10

11                  **UNITED STATES DISTRICT COURT**

12                     **DISTRICT OF NEVADA**

13
   *PRISON LEGAL NEWS,* a project of the     ) Case No.  3:00-cv-00373-HDM-WGC
14 HUMAN RIGHTS DEFENSE CENTER, a            )
   Washington Nonprofit Corporation          )           (CONSOLIDATED)
15 PAUL WRIGHT (current publisher of Prison  )
   Legal News),                              )
16                     Plaintiffs,           )   **STIPULATION AND ORDER OF**
                                             )   **DISMISSAL WITHOUT PREJUDICE**
17         vs.                               )
                                             )
18 JACKIE CRAWFORD in her official capacity  )
   as the former director of NDOC, JOHN      )
19 SLANSKY(*deceased*), in his official and  )
   individual capacities as former assistant )
20 director of NDOC, ROBERT BAYER, in his    )
   official and individual capacities as the former )
21 Director of NDOC, DOES I-XXV, Defendant   )
   RED ANDWHITE CORPORATIONS I-X, and        )
22 BLACK AND BLUE STATE and/or               )
   MUNICIPAL ENTITIES I-X,PRISON LEGAL       )
23 NEWS, *et al*,                            )
                     Defendants.             )
24                                           )
                                             )
25
26
27
   Office of the 28
   Attorney General
   100 N. Carson St.
   Carson City, NV
   89701-4717

   I0979-17                                1

1
2
3    *PRISON LEGAL NEWS,* a project of the
     HUMAN RIGHTS DEFENSE CENTER, a
4    Washington Nonprofit Corporation,
5                        Plaintiffs,
         vs.
6
     JAMES GREG COX (in his official capacity)
7    as Director of Nevada Department of
     Corrections; E.K. McDaniel (in his official
8    capacity) as Deputy Director of Operations at
     NDOC; and DOES I - XXV,
9
                        Defendants
10
11

12        Plaintiff Prison Legal News, by and through counsel Allen Lichtenstein and Staci Pratt,

13   with *pro hac vice* counsel Lance Weber, Ernest Galvan and Lisa Ells, and Defendants James

14   Greg Cox and E.K. McDaniel, by and through counsel, Adam Paul Laxalt, Nevada Attorney

15   General, and Andrea R. Barraclough, Chief Deputy Attorney General, and Charles W.

16   Lehman, Deputy Attorney General, as a result of a Settlement Agreement reached, hereby

17   stipulate to the dismissal of this action without prejudice, in accordance with the terms below.

18        First, per the Settlement Agreement, attached as Exhibit A, and the Addendum, attached

19   as Exhibit B, the parties agree to the dismissal of the claims outlined therein; on the condition

20   that the Court will maintain jurisdiction for the purposes of entertaining any enforcement and

21   monitoring actions brought by Plaintiffs.  Per the Settlement Agreement, the period of time for

22   this will be no less than ten (10) years, at which time, the Defendants may move to have the

23   court fully and finally dismiss the case with prejudice, thereby terminating the instant case

24   number and its consolidated docket number 3:13-cv-00346-HDM-WGC.    Additionally, the

25   parties agree for this Court to administratively close this action, upon the Court's execution of

26   this stipulation and order, subject to a motion to reopen at any time by either party.

27        Second, per the Settlement Agreement, damages and attorney fees and costs were

28   combined into one-lump sum figure. Accordingly, for purposes of this motion so the Court need

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

[0979-17
'2822238L-1]

2

1  not involve itself in a costs and fees analysis, the parties stipulate to the dismissal of this action,

2  with each party to bear their own costs and fees up to and including the date of the Court's entry

3  of this Order.  This agreement on costs and fees, however, does not include any fees or costs

4  accumulated henceforth as outlined in the Settlement Agreement for enforcement or

5  monitoring.

6        Finally, the Court, through its inherent authority, has decided that the new Settlement

7  Agreement (Exhibit A, and Addendum at Exhibit B) will supersede the 2000 consent decree,

8  as it is a more clear and definite statement of obligations by both parties. Therefore, the Court

9  hereby dismisses the 2000 case and consent decree, but does so without prejudice.  In the

10  event the 2000 consent decree does contain terms not contemplated by the new Settlement

11  Agreement (Exhibit A, and Addendum at Exhibit B) and in the event the parties wish to

12  address the 2000 consent decree or seek enforcement of any term therein, either party may

13  make a motion seeking appropriate relief.

14        RESPECTFULLY SUBMITTED, this 26th day of February, 2016.

15

16  ADAM PAUL LAXALT                          Human Rights Defense Center
    Attorney General

17

18  By:                                      By:

19  ANDREA R. BARRACLOUGH                     LANCE WEBER
    Chief Deputy Attorney General            pro hac vice

20  Nevada Bar No. 9158                       General Counsel
    Attorneys for Defendants                 Attorneys for Plaintiff

21

22

23

24  APPROVED AND SO ORDERED:

25

26                                           HOWARD D. MCKIBBEN
                                             UNITED STATES DISTRICT JUDGE

27

28  DATED:

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

[09?9-17
20???60-11

3

# EXHIBIT A

# EXHIBIT A

In the Matter of:
**Prison Legal News v. Cox, et al.**
**Case No. 3:00-cv-00373-HDM-WGC (Consolidated)**
(U.S. District Court, District of Nevada)

---

## SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE

THIS SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE (hereinafter referred to as the "Agreement") is made and entered into as of the date this Agreement is signed, by and among the NEVADA DEPARTMENT OF CORRECTIONS ("NDOC"), on behalf of itself and all of its officers, directors, employees, former-employees, agents, predecessors, divisions, correctional facilities, successors, administrators, and assigns, including, but not limited to Jackie Crawford, John Slansky, James Cox, E.K. McDaniel, and any other persons named in the original Complaint at the above case number or the new Complaint at 3:13-cv-00346-HDM-WGC who are or were NDOC employees (collectively referred to as "the NDOC"), and PRISON LEGAL NEWS ("PLN"), on behalf of itself and all of its officers, directors, employees, former-employees, agents, predecessors, divisions, correctional facilities, successors, administrators, and assigns.

I.    **RECITALS**

A.    At all times relevant hereto, Jackie Crawford, John Slansky, James Cox, E.K. McDaniel are or were NDOC employees;

B.    At all times relevant hereto, PLN is a wholly owned publishing project of the Human Rights Defense Center, a 501(c)(3) nonprofit corporation with offices in Lake Worth, Florida. PLN publishes *Prison Legal News*, a monthly journal of corrections, news and analysis. PLN has thousands of subscribers in the United States and abroad, including prisoners, attorneys and judges.

C.    This Agreement addresses and resolves certain disputes arising from and relating to allegations that the NDOC violated PLN's First and Fourteenth Amendment

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 2 of 15

rights as it relates to the handling and delivery of its publications to NDOC incarcerated inmates and the alleged lack of due process associated with the NDOCs failure to provide PLN notice and opportunity to be heard regarding refused or censored publications;

       D.    In reviewing the claims of the Complaint, the NDOC and all individually-named Defendants deny that the NDOC and its employees engaged in any culpable conduct. The NDOC's legal position was at all times, and remains, that PLN's rights were not violated; and

       E.    Without making any admission of liability on either part, the NDOC and PLN have reached a settlement ("Settlement") of their disputes and this litigation. This written Agreement memorializes the Settlement terms reached by and between the NDOC and PLN.

## II.   SCOPE OF AGREEMENT

       A.    On September 18, 2000, the NDOC and PLN entered into a Stipulation and Judgment/Order under Case No. 3:00-cv-00373-HDM-WCG ("2000 Agreement"). Same acted as a consent decree and contained no language establishing an end date; thus, that consent decree exists in perpetuity as between the NDOC and PLN absent a court order terminating that consent decree.

       B.    Both parties agree that the terms of the 2000 Agreement reached in *Prison Legal News v. Crawford*, 3:00-cv-00373-HDM-WCG, will remain in force and effect in addition to the instant Settlement Agreement, except that: 1) the proper party is no longer the Nevada Department of Prisons but the Nevada Department of Corrections; 2) all references on pages three to five of the consent decree placing the obligation of rejection and review into the Warden's hands are superseded to the extent those same powers of review and rejection now lie with the Publications Review

[2865296-3]

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 3 of 15

Committee; and 3) the appropriate appellate body for a relevant due process appeal submitted by either a sender or inmate is no longer the Director of the Department, but is now an independent and unbiased party who did not sit on the Publication Review Committee (this will most likely be the Deputy Director or a designee).

C.      While this Settlement Agreement will act as the catalyst for dismissal of all claims for relief asserted in Plaintiff's Second Amended Complaint (Dkt. No. 117) and any pending enforcement claims related to the 2000 Agreement, the parties anticipate an abeyance of the dismissal so that the Court may maintain jurisdiction for the purpose of enforcing the settlement, per the terms below.  Though this dismissal will close out the above case number, in abeyance for the next ten (10) years and permanently thereafter upon motion, as described below, the parties agree that said dismissal will not terminate the 2000 Agreement, which remains operative in perpetuity, with the exceptions as outlined in Section II(B) below.

**III.    INJUNCTIVE TERMS**

Both parties agree to the following injunctive terms:

**APPROVED VENDORS**

Since the inception of this lawsuit, Defendants have amended NDOC regulations to exclude any policy whereby publishers and other vendors or distributors of publications such as books, magazines, pamphlets and other printed literature were placed on an approved list, and prisoners were only allowed to receive publications from vendors that were on the approved list(s).

As a mechanism of injunctive relief to ensure that Defendants do not revert back to this type of policy and practice, Defendants agree that all incoming publications will be reviewed on a case-by-case basis for a determination of suitability within the parameters of institutional safety and security regardless of the identity of the publisher,

(2865295-3)

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 4 of 15

vendor or other distributor.   Defendants agree not to censor or withhold books based

solely on the presence or absence of a sender's name on a list of approved publishers,

vendors or distributors.   If NDOC maintains any such list or lists of approved publishers

it shall be for purposes of reference only and shall not be used as the sole basis for

censorship of any publication absent an independent inquiry into the legitimacy of the

publisher.   Defendants will agree that a copy of the list, if any exists, will be provided to

a publisher, vendor or prisoner upon request.   To this end, the Parties acknowledge

that, in the event that there is any question as to the legitimacy of any particular

publisher, vendor or other distributor of printed literature, the NDOC shall perform all

appropriate research to determine whether any person or entity mailing publications to

prisoners is an actual publisher, vendor or other distributor of printed publications. In the

event that any publication is withheld from any prisoner on the grounds that the

publisher or distributor is not an actual publisher, vendor, or distributor of printed

publications, both the sender and the intended recipient of the publication shall get

notice and an opportunity to be heard as more fully described below.

## POSTAL RATES

Since the inception of this lawsuit, Defendants have amended NDOC regulations

to exclude the requirement that all books be mailed to prisoners via First Class mail.  As

a mechanism of injunctive relief to ensure NDOC does not revert back to this policy or

practice, Defendants agree that all incoming publications will be reviewed on a case by

case basis for a determination of suitability within the parameters of institutional safety

and security regardless of the postal rate used by the sender.  Defendants agree that

postal classification shall not be a basis for rejection of any mail sent to NDOC

prisoners.

[2665295-3]

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 5 of 15

## ADDRESS LABELS AND STICKERS

Since the inception of this lawsuit, Defendants have amended NDOC regulations
to exclude a practice whereby incoming mail was censored because of the presence of
an address label and/or a sticker on the outside of the envelope or packaging. As a
mechanism of injunctive relief to ensure NDOC does not revert back to this policy, the
Defendants agree that all incoming mail to a prisoner, regardless of the presence of
address labels or stickers on the outside cover or other packaging, will be reviewed on a
case by case basis for a determination of suitability within the parameters of institutional
safety and security. The Parties acknowledge that alternatives exist in which envelopes
and packaging may be discarded or address labels may be removed prior to the
distribution of the mail to prisoners in order to avoid security risks. The Parties also
acknowledge that there may come a time in the future when address labels, stickers, or
the presence thereof may warrant exclusion, confiscation or investigation depending on
whether new forms of contraband smuggling make use of address labels or adhesives.
In that future event (with the acknowledgment that no mass need to scrutinize and
remove address labels or stickers currently exists as of the date of this Agreement), the
Defendants may instruct NDOC staff to examine each sticker or address label on a case
by case basis to determine the presence of an adulterated or contraband label or
sticker, and the presence of an adulterated or contraband label may warrant refusal to
deliver the mail pending an investigation. Defendants agree that the mere presence of
address labels or stickers alone shall not be a basis for censorship of incoming mail
intended for NDOC prisoners.

## PRIOR APPROVAL OF BOOK ORDERS

Since the inception of this lawsuit, Defendants have amended NDOC regulations,
policies and practices to exclude a policy and practice whereby prisoners had to:

[2865295-3]

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 6 of 15

a) seek and obtain permission from NDOC staff persons as a condition precedent to receiving any books in the mail, and, b) ensure that the book was delivered by the publisher to the institution within sixty (60) days of the date of approval.  As a mechanism of injunctive relief to ensure NDOC does not revert back to this policy and practice, Defendants agree that prisoners will not have to request advance permission in order to have an incoming book and/or publication reviewed by mailroom staff and/or the Publication Review Committee for delivery to the prisoner.  Defendants further agree that prisoners will not have to ensure that books and/or publications are delivered according to any particular type of time schedule in order to have an incoming book and/or publication reviewed by mailroom staff and/or the Publication Review Committee for delivery to the prisoner.  This settlement term does not affect NDOC's ability to withhold and forward concerning materials to the Publication Review Committee nor does it affect the Publication Review Committee's ability to reject books and/or publications that present a safety and security concern or that violate other terms of NDOC Administrative Regulations (ARs).

In the event that any incoming book and/or publication is withheld from delivery to a prisoner and forwarded to the Publication Review Committee, the mailroom staff person who makes the initial censorship decision will provide to both the sender and the prisoner a written notice of the initial censorship decision and information about the opportunity to appeal the decision of either the mailroom staff person or the Publication Review Committee as more thoroughly described below.

## DUE PROCESS

Since the inception of this lawsuit, Defendants have amended NDOC Administrative Regulation 750.06 regarding the provision of notice and appeal (due process) to those affected by the censorship of their U.S. Mail.

[2865296-3]

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 7 of 15

---

To ensure that AR 750.06 is complied with across all institutions, NDOC will instruct the Warden of each institution to review the institution's individual mailroom policies as they regard due process to senders of rejected publications, and the Wardens will ensure that each institution's Operational Procedures (OPs) adhere to both AR 750.06 and principles of due process.

To that end, Defendants agree to implement institutional OPs to clarify that both senders and recipients of mail are entitled to receive timely, written notice and an opportunity to appeal censorship decisions whenever a piece of mail is withheld from the regular course of delivery to a prisoner.  The NDOC agrees that any new or revised OPs regarding incoming mail will include: 1) a mechanism by which rejected, withheld or censored mail will be retained by the NDOC until all appeals of the initial censorship decision have been resolved or until after the deadline to file an appeal has expired if no appeal has been filed; 2) a process whereby notice of the censorship is given to both the sender and intended recipient of censored mail (this notice should make clear the reasons for the rejection; note the specific section or part of mail alleged to violate security, policy or rule; and should provide the name and address of the NDOC staff member to whom an appeal should be lodged); and 3) a means of ensuring that the appeal of censorship or refusal to deliver is unbiased, conducted by someone who did not participate in the initial censorship decision, and is based on a personal secondary inspection of the censored or rejected material.

Further, the Warden of each institution will: 1) draft into the institution's OP a mechanism for an audit of the institution's mail room that will be conducted two times per year with the goal of ensuring compliance with AR 750.06 and the corresponding OP; and 2) draft into the institution's OP a provision that, should any Warden, Associate Warden or caseworker in their capacities as grievance responders become aware of a

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.*; Case No. 3:00-cv-00373-HDM-WGC
Page 8 of 15

grievance alleging that a sender of mail was not provided notice of rejection or notice of
right to appeal, the Warden or Associate Warden will investigate mail room compliance
with the applicable Administrative Regulation and Operational Procedure outside of the
biannual audit.

When the revised OP of each institution is submitted to the Deputy Director for
approval, the Wardens will include a notice to the Deputy Director that changes to the
OP were made in conjunction with this Agreement for tracking purposes. NDOC agrees
to notify PLN when each institution's OP has been amended to conform to this
Agreement. Both parties acknowledge the amendment of the OPs will be performed
after the date that the Court orders a dismissal of PLN's pending claims.

Defendants also agree to implement a training program for mailroom staff
regarding the handling and dissemination of inmate mail. To that end, a training manual
will be created by the NDOC. Defendants agree that, before the training manual is put
into use, it will provide a draft copy of the training manual to PLN for the purpose of
soliciting input from PLN. Though the parties agree that Defendants need not accept all
PLN suggestions for training manual language, the Defendants agree to evaluate PLN's
suggestions in good faith, to obtain advice of their counsel regarding the propriety of
PLN's proposed language and to implement PLN proposed terms to the extent they do
not conflict with or impinge on institutional safety and security, or do not significantly
strain the NDOC's legislatively approved fiscal budgets.

Both parties acknowledge that when the vendor and/or publisher receives a
publication back noted as "returned to sender," and the prisoner is no longer
incarcerated by NDOC, the above due process requirements will not apply.

Finally, the NDOC also agrees to further amend and clarify AR 750.06 at its first
available opportunity to more clearly outline the due process required when publications

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 9 of 15

are censored or withheld from a prisoner. PLN acknowledges that the process of implementation of an AR requires approval of the Board of Prison Commissioners (the Board), which only meets quarterly, and that it could take up to six months to get a revised AR on the agenda depending on the volume of ARs up for approval. Accordingly, both parties acknowledge this part of the Agreement will not be carried out until after dismissal of the claims. However, the NDOC agrees to provide PLN notification of when a revised AR 750 is adopted by the Board.

## NDOC STAFF TRAINING

NDOC agrees to implement a certified training program for the post of mailroom Corrections Officer, which will include topics on: 1) the correct handling of notices to prisoners and to senders when incoming mail is withheld per the amended AR 750.06; 2) the requirements of sending notice of rejection and notice of right to appeal to the sender of rejected mail per AR 750.06; 3) the requirement of saving and maintaining a repository for all notices sent to senders of rejected publications per AR 750.06; 4) the process for preserving censored or rejected mail for secondary review by NDOC staff not involved with the initial censorship decision; and 5) the history of litigation with Prison Legal News, including the 2000 consent decree and the terms of this Agreement. The training will culminate with the assigned officer needing to take and pass a quiz before he or she qualifies to be assigned to the mailroom.

IV.    MISCELLANOEUS PROVISIONS

## FORCE MAJEURE

The parties acknowledge that terms of this Agreement may be rendered inapplicable by future enactment of state statutes or decisions of state or federal courts (though such laws or decisions are not known to exist at this time). Further, the parties understand that provisions of this Agreement may be rendered temporarily

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 10 of 15

Impracticable or unavailable due to riots, strikes by either prisoners or employees, extreme weather conditions, or acts of nature or Acts of God, whatever those may be (though no such conditions are known to exist at this time). Nonetheless, NDOC anticipates being able to perform under the terms of this Agreement in a manner that protects the constitutional rights of both recipients and senders of prisoner mail at NDOC institutions.

### JURISDICTION TO ENFORCE

NDOC acknowledges that PLN will request that the federal District Judge or Magistrate Judge overseeing this case maintain jurisdiction over this case beyond its dismissal to hear any enforcement actions. NDOC will not oppose that request to the extent that, if the judge agrees, future jurisdiction for enforcement will be limited to (10) ten years. Should the Court agree to retain jurisdiction for ten (10) years following the dismissal of the claims, and in the event PLN believes enforcement of the Agreement is needed, PLN may move the Court to enforce the Agreement. PLN may also seek attorneys' fees and costs related to said motions and the monitoring required to prepare for said motions, as more fully outlined below. There will also be affirmative action needed by the NDOC to terminate this action, as outlined below. If the Court grants NDOC's Motion to Terminate as referenced below and ten (10) years have passed, PLN will have to seek relief under a new case number.

Accordingly, this case will be dismissed but with the dismissal held in abeyance, if the Court agrees. To effectuate this, both parties will execute a stipulation and order to dismiss with the provision of jurisdiction described herein identified.

To terminate this action, NDOC must make a motion seeking that relief. NDOC agrees that it may only make a Motion for Termination in this matter on or after the tenth

/ / /

[2865295-3]

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.*; Case No. 3:00-cv-00373-HDM-WGC
Page 11 of 15

anniversary of the execution of the Agreement seeking to formally dismiss the case and remove the abeyance in accordance with the terms of the Agreement, but will do so no earlier than the tenth anniversary of the Agreement.

### MONITORING AND FEES

NDOC agrees that, to monitor compliance with this Agreement during the specified ten (10) year period, PLN may undertake the following monitoring activities:

    a.  PLN may perform a case by case analysis of individual complaints;

    b.  PLN may send out surveys to its subscribers two times per year; and

    c.  PLN may do quarterly reviews of DOC Forms 3022 (or any form with a different title whose purpose is the same), and the mail monitoring logs (or their equivalent), specific to any PLN publications. These forms will be sent to PLN by the Warden of each of the 7 main NDOC institutions. NDOC will provide these forms to PLN on a quarterly basis, same to be redacted to exclude non-PLN entities.

Each of these monitoring activities may be conducted prior to seeking informal resolution. However, should any of these above monitoring activities reveal issues, PLN agrees to first contact the Attorney General's Office to resolve the matters informally. Should PLN feel it needs to perform monitoring activities in excess of those described above, it will first try to gain informal permission to do so via the Attorney General's Office, but may seek Court approval for excess monitoring activities if informal permission is denied.

PLN agrees that any money sought in monitoring fees and costs will be limited to PLN's monitoring of its own publications and access to its own materials.

PLN agrees that it will provide a report to the Attorney General's Office biannually on June 30th, starting on June 30, 2017, which will itemize all the monitoring charges

{2865295-3}

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 12 of 15

accumulated for that period.  Both parties agree that NDOC may challenge with the

Court any amount of fees charged and billed.

### TIME FOR IMPLEMENTATION

PLN agrees to give NDOC a 60-day period of time from the execution of this

Agreement to implement the policies and terms of this Agreement before it seeks to

begin enforcement, with the acknowledgement that it will take NDOC some time to

make the necessary changes.

### NOTICE TO INMATES OF THIS AGREEMENT

PLN will send a one (1) page summary of the terms of this Agreement to NDOC

and NDOC agrees to post the summary document in the NDOC housing units for a

period of sixty (60) days.  NDOC also agrees to maintain the full terms of this

Agreement in its law libraries, available upon request to individual prisoners, for the

duration of the Agreement.

### V.    MONETARY AGREEMENT AND DISMISSAL

In exchange for PLN's release and dismissal of all pending legal claims against

the NDOC and all named Defendants, held in abeyance per the terms above, the

NDOC and PLN hereby agree to finally settle all claims, disputes, and controversies,

arising from and relating to all disputes and litigation, pursuant to the following terms:

1.    The NDOC agrees to pay PLN a total of $475,000 (four-hundred,

seventy-five thousand dollars).  This total sum combines damages and attorney fees

and costs.  PLN may determine the allocation of this money between damages and

attorney fees and costs at its own discretion.  The NDOC (via the State Tort Fund) will

direct payment to PLN's local counsel, Allen Lichtenstein.  PLN must satisfy any retainer

agreements or payment arrangements with HRDC, hired counsel and local counsel, and

NDOC will not be responsible if attorney fees arrangements are not satisfied between

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 13 of 15

PLN and its attorneys.   PLN acknowledges that payment of this monetary sum is contingent on the approval of the State of Nevada Board of Examiners.

       2.    In consideration of the above terms agreed to by NDOC, PLN agrees to dismiss the instant case, though as described above, the 2000 Agreement reached originally in the instant case will survive in perpetuity.   Said dismissal will be with prejudice in the United State District Court, though said dismissal may be held in abeyance for ten (10) years at the discretion of the Court for the purpose of entertaining enforcement actions per the terms described above.   To that end, PLN agrees to execute the contemporaneously submitted Stipulation and Order to Dismiss and return same to NDOC for filing.   Once filed, the NDOC will instruct all payments to be made in accordance with the Agreement and will implement all terms of injunctive relief as outlined herein.   Though the case will be dismissed in abeyance, the parties agree that, should the District Court or Magistrate Judge elect to retain jurisdiction for enforcement actions for a period of ten (10) years as outlined above, PLN may seek enforcement of the Agreement via the procedural mechanism required by the presiding Judge, and further agree that the 2000 Agreement reached in the instant case will survive the dismissal and may be used as a basis for future enforcement actions.

## VI.    CONTINGENCIES

The above agreement is structured to give the Court proper deference in deciding whether to retain jurisdiction.   However, PLN reserves the right, in the event the Court declines to retain jurisdiction for ten (10) years for the purpose of deciding enforcement actions, to withdraw from this Agreement without penalty.   To verify that the Court will retain jurisdiction prior to the filing of the Stipulation to Dismiss, Defendants agree to place on calendar a Request for Hearing.   During this hearing, the

[2865295-3]

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 14 of 15

parties will ascertain the intentions of the Court regarding its intent to accept or decline continued jurisdiction per the terms of this Agreement.

This Agreement is also contingent upon the NDOC receiving from PLN summaries of attorney billing records to justify its attorneys' fees within two (2) weeks of the execution of this Agreement.

As noted above, the Agreement is also contingent on the approval of the Board of Examiners.

## VII.    COMPROMISE AND NO LIABILITY

The parties agree that this Agreement is a complete compromise of matters involving disputed issues of law and fact relating to all the above-described disputes and the litigation, and they assume the risk that the facts or law may be otherwise than they believe. The parties understand and agree that this Settlement is a compromise of all disputed claims to date. The parties understand and agree that the consideration given by the NDOC in exchange for the release of all claims asserted by PLN, as set forth herein, is not to be construed and shall never at any time for any purpose be considered an admission of liability on the part of any party, by whom liability is expressly denied.

## VIII.    BINDING EFFECT UPON SUCCESSORS IN INTEREST

This Agreement shall be binding upon and inure to the benefit of the NDOC and PLN, and their respective successors and assigns.

## IX.    COMPLETENESS OF DOCUMENT

This Agreement contains the entire understanding between the parties with respect to the matters set forth herein, and there are no representations, warranties, agreements, arrangements, or undertakings, oral or written, between or among the

[2865295-3]

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 15 of 16

parties hereto relating to the subject matter of this Agreement which are not fully
expressed herein.

THE NEVADA DEPARTMENT OF
CORRECTIONS

By:

**PAUL WRIGHT**
Editor and Executive Director of HRDC

**E.K. MCDANIEL**
Interim Director

DATED: ___11/18/2015___

DATED: __11-23-15__

**APPROVED AS TO FORM AND CONTENT**

**ANDREA BARRACLOUGH**
Chief Deputy Attorney General
*Attorney for Defendants*

DATED: __11/20/2015__

**APPROVED AS TO FORM AND CONTENT**

**LANCE WEBER**
General Counsel, Human Rights Defense Center
*Attorney for Plaintiff*

DATED: __11-18-2015__

# EXHIBIT B

# EXHIBIT B

**In the Matter of:**
**Prison Legal News v. Cox, et al.**
**Case No.  3:00-cv-00373-HDM-WGC (Consolidated)**
(U.S. District Court, District of Nevada)

---

## ADDENDUM TO SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE

Between November 18, 2015, and November 23, 2015, a SETTLEMENT AGREEMENT AND FULL AND FINAL RELEASE (hereinafter referred to as the "original Agreement") was fully executed in the above case number.  This document acts as an addendum to that original Agreement, and will thus be incorporated as if fully expressed in the original Agreement.  As with the original Agreement, this addendum is made and entered into as of the date signed, by and among the NEVADA DEPARTMENT OF CORRECTIONS ("NDOC"), on behalf of itself and all of its officers, directors, employees, former-employees, agents, predecessors, divisions, correctional facilities, successors, administrators, and assigns, including, but not limited to Jackie Crawford, John Slansky, James Cox, E.K. McDaniel, and any other persons named in the original Complaint at the above case number or the new Complaint at 3:13-cv-00346-HDM-WGC who are or were NDOC employees (collectively referred to as "the NDOC"), and PRISON LEGAL NEWS ("PLN"), on behalf of itself and all of its officers, directors, employees, former-employees, agents, predecessors, divisions, correctional facilities, successors, administrators, and assigns.

I.    **TERMS OF THE ADDENDUM**

A.    Section II, Subsection B, of the original Agreement, is replaced in its entirety by the following language (new language in bold):

"**Both parties agree that the terms of the instant Agreement supersede the terms of the 2000 Agreement reached in *Prison Legal News v. Crawford*, 3:00-cv-00373-HDM-WCG, except as to any material term contained in the 2000 agreement that is not substantially covered by the instant Agreement,**

[2865295-3]

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 2 of 4

in which case any such material term will be considered to be incorporated by reference in the instant Agreement. The 2000 Agreement is attached as Exhibit A, and incorporated herein by reference. Both parties agree that, while the 2000 consent decree will be superseded, PLN may still make a motion seeking to enforce a term of the 2000 consent decree not covered by the instant Agreement if it believes there has been a breach of that term."

B.      Section II, Subsection C, of the original Agreement, will have the following replacement language added (new language in bold):

"While this Settlement Agreement will act as the catalyst for dismissal of all claims for relief asserted in Plaintiff's Second Amended Complaint (Dkt. No. 117) and any pending enforcement claims related to the 2000 Agreement, the parties anticipate an abeyance of the dismissal so that the Court may maintain jurisdiction for the purpose of enforcing the settlement, per the terms below. Though this dismissal will close out the above case number, in abeyance for the next ten (10) years and permanently thereafter upon motion, as described below, the parties agree that said dismissal will not **prohibit PLN from moving to enforce any term of the instant Agreement or** the 2000 Agreement **that is not substantially covered by a term of the 2000 consent decree**, with the exceptions as outlined in Section II(B) below."

C.      Section V, Subsection 2, of the original Agreement, will have the following replacement language added (new language in bold):

"In consideration of the above terms agreed to by NDOC, PLN agrees to dismiss the instant case, though as described above, **enforcement motions regarding any terms of the instant Agreement and/or terms of** the 2000 Agreement **not**

Settlement Agreement In the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 3 of 4

---

**substantially covered by the Instant Agreement may be filed by PLN.** Said dismissal will be **without** prejudice in the United State District Court, though said dismissal may be held in abeyance for ten (10) years at the discretion of the Court for the purpose of entertaining enforcement actions per the terms described above. To that end, PLN agrees to execute the **subsequently** submitted Stipulation and Order to Dismiss and return same to NDOC for filing. Once filed, the NDOC will instruct all payments to be made in accordance with the Agreement and will implement all terms of injunctive relief as outlined herein. Though the case will be dismissed in abeyance, the parties agree that, should the District Court or Magistrate Judge elect to retain jurisdiction for enforcement actions for a period of ten (10) years as outlined above, PLN may seek enforcement of the Agreement via the procedural mechanism required by the presiding Judge and further agree that the **terms of the** 2000 Agreement **not substantially similar to the terms of the Instant Agreement** may be used as a basis for future enforcement actions.

## II.    BINDING EFFECT UPON SUCCESSORS IN INTEREST

This addendum to the Agreement shall likewise be binding upon and inure to the benefit of the NDOC and PLN, and their respective successors and assigns.

## III.    COMPLETENESS OF AGREEMENT

The parties agree that the three (3) changed subsections described above are the only changes being made to the original Agreement, and that all other terms therein remain in full force and effect, unchanged.

## IV.    ACKNOWEDGEMENT OF NO MONETARY CHANGES

Both parties agree that this addendum in no way impacts the financial terms of settlement that by the time of this execution has been approved by the Nevada Board of

[2865295-3]

Settlement Agreement in the Matter of
*Prison Legal News v. Cox, et al.;* Case No. 3:00-cv-00373-HDM-WGC
Page 4 of 4

/ / /

Examiners.  Accordingly, as no monetary changes have been offered, sought or made,

this addendum need not be subject to Board of Examiners approval.

THE NEVADA DEPARTMENT OF
CORRECTIONS

By: _____ *HDDFI, FOR E.K. McDaniel*

_____
PAUL WRIGHT
Editor and Executive Director of HRDC

E.K. MCDANIEL
Interim Director

DATED: ____2/26/2016____

DATED: ____2/26/2016____

APPROVED AS TO FORM AND CONTENT

_____
ANDREA BARRACLOUGH
Chief Deputy Attorney General
*Attorney for Defendants*

DATED: ____2/26/2016____

APPROVED AS TO FORM AND CONTENT

_____
LANCE WEBER
General Counsel, Human Rights Defense Center
*Attorney for Plaintiff*

DATED: ____February 25ᵗʰ, 2016____

[2065295-3]